CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUN 21 2012
JULIA C. DUDLEY, CLERK
BY: /s/ Bright
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| LEAH Y. SNYDER, | ) | |
| | ) | Civil Action No. 3:11-cv-00064 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | By: Hon. Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant. | ) | |

The plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying the plaintiff's claim for a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This court's review is limited to a determination of whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the requirements for entitlement to benefits under the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Leah Yvonne Snyder, was born on November 11, 1949. She has now earned a GED. Mrs. Snyder's past relevant work includes the positions of licensed practical nurse, home health nurse, office nurse, and charge nurse. On September 17, 2009, the plaintiff filed an application for a period of disability and disability insurance benefits. Mrs. Snyder alleged that she became disabled for all forms of substantial gainful employment on February 2, 2000, due to numerous conditions, including bilateral capsulitis of the shoulders, diabetes

mellitus, retinopathy, ear pain, back pain, central pain syndrome, and hypoglycemia. The record reveals that Mrs. Snyder met the insured status requirements of the Act through March 31, 2004. Consequently, the plaintiff is entitled to disability insurance benefits only if she has established that she became disabled for all forms of substantial gainful employment on or before March 31, 2004. See generally 42 U.S.C. § 423(a).

Mrs. Snyder's claim was denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated February 15, 2011, the Law Judge determined that the plaintiff was not disabled[1] from February 2, 2000, her alleged onset date, through March 31, 2004, her date last insured. The Law Judge found that Mrs. Snyder suffered from severe impairments in the form of bilateral capsulitis of the shoulders and diabetes mellitus. The Law Judge assessed the plaintiff's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. 404.1567(b), which consists of lifting and carrying objects weighing up to 20 pounds; frequently lifting and carrying objects weighing 10 pounds; and standing and/or walking a total of six hours in an eight-hour workday.

(Tr. 18.) After considering this residual functional capacity in conjunction with the plaintiff's age, education, and prior work experience, as well as the testimony of a vocational expert, the Law Judge determined that Mrs. Snyder retained sufficient functional capacity to perform her past relevant work as an office nurse and as a charge nurse. Accordingly, the Law Judge ultimately concluded that the plaintiff was not disabled through her date last insured and, thus, that the plaintiff was not entitled to a period of disability or disability insurance benefits. See

---

[1] Disability is defined by the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

2

generally 20 C.F.R. § 404.1520(f). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mrs. Snyder has now appealed to this court.

While the plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether the plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159–60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this matter, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. As stated above, the Law Judge found that Mrs. Snyder's bilateral capsulitis of the shoulders and diabetes mellitus constituted the only severe impairments in this case and that these severe impairments, when considered in conjunction with the plaintiff's other medically determinable nonsevere impairments, did not render her incapable of performing her past relevant work. Essentially, the plaintiff's main contention, as expressed at oral argument, is that the Law Judge erred by failing to account for what she believes was her primary severe impairment—what is referred to in the record as chronic or central pain syndrome on the left side of her body. The plaintiff also argues, to a lesser extent, that the Law Judge erroneously failed to find a severe impairment with respect to her vision blurriness and eye pain. As set forth in the opinion, the Law Judge expressly determined that these two conditions did not cause more than minimal limitation in the plaintiff's

3

ability to perform basic work activities and, thus, did not qualify as severe impairments. See 20 C.F.R. § 404.1521. The court agrees that objective medical evidence, the opinions of the plaintiff's treating physicians, and her own testimony support her contention that chronic pain syndrome and her visual problems constitute impairments during the insured period—the Law Judge recognized as much in the opinion. (Tr. 17.) However, the key question in this case is whether all of the plaintiff's impairments, considered singly or in combination, rendered her disabled prior to March 31, 2004.

Under the Social Security Regulations, a sequential disability analysis has been established for purposes of considering whether a claimant is disabled under the Act. 20 C.F.R. § 404.1520(a). Under this sequential disability analysis, the Administrative Law Judge must first determine whether the claimant is still engaged in substantial gainful activity. If the claimaint did not work during the relevant period, the Law Judge must then determine whether the claimaint is severely impaired. A severe impairment is one that significantly limits a claimant's physical or mental ability to perform basic work activities. Id. § 404.1520(c), 404.1521. If the claimant suffers from a severe impairment, the Law Judge must then determine whether that impairment meets or equals a certain listing of impairments. If the impairment does not meet or equal a listed impairment, then the Law Judge must determine, based on the claimant's residual functional capacity, whether the impairment prevents the claimant from performing her past relevant work. If the claimant is able to perform her past relevant work, then the Law Judge must determine whether the impairment prevents the claimant from making an adjustment to any other work.

As noted above, in the instant case, the Law Judge found that the plaintiff's chronic pain and visual problems did not qualify as severe impairments during the relevant insured period. Furthermore, the Law Judge denied Mrs. Snyder's claim at the fourth step of the sequential

analysis, finding that she retained sufficient functional capacity during the insured period to perform her past relevant work. The plaintiff does not contend on appeal that her shoulder capsulitis and diabetes (the two impairments which the Law Judge found to be severe) caused her to be disabled during the insured period. Instead, the plaintiff essentially contends that those severe impairments, along with her chronic pain and eye condition, rendered her disabled prior to the date last insured. Having reviewed the record, the court believes that the objective medical evidence from the insured period supports the Law Judge's finding that the plaintiff's chronic pain syndrome and retinopathy did not constitute severe impairments on or before March 31, 2004. The court further agrees that the effect caused by the combination of severe and nonsevere impairments was not so severe as to prevent the plaintiff from performing her past relevant work.

The objective medical evidence through the date last insured shows that, despite her shoulder capsulitis, the plaintiff maintained a full range of motion and 5/5 rotation strength. Furthermore, the evidence suggests that Mrs. Snyder was actually experiencing improvement in her medical conditions as the insured period progressed. Joseph A. Aloi, M.D., opined in January 2002 that he doubted that her complaints of left-sided pain related to diabetic neuropathy and, in April 2003, observed that she "appear[ed] well." (Tr. 300, 302, 280.) In February 2004, Dr. Stephenson observed that Mrs. Snyder had undergone numerous CT and MRI studies "without evidence of any problems to explain" her complaints "of left-sided body numbness and pain in combination." (Tr. 1167.) Furthermore, the objective medical evidence from the insured period substantiates the assessments of the state agency physicians, Henry Scovern, M.D., and R.S. Kadian, M.D., who reviewed all evidence of record and opined that Mrs. Snyder, during the relevant insured period, was capable of lifting and carrying twenty pounds occasionally and ten pounds frequently; standing and/or walking about six hours in an eight-hour workday; sitting about six hours in an eight-hour workday; and occasionally reaching overhead and climbing a

5

ladder, rope, or scaffold. (Tr. 1057–59, 181–82.) Furthermore, in his assessment, Dr. Scovern noted the poorly defined nature of the plaintiff's "central pain syndrome." (Tr. 1063.) Apart from this affirmative evidence, the court also notes the complete dearth of any objective medical evidence from the insured period suggesting that the plaintiff's impairments, when considered either individually or collectively, were of disabling severity. Hence, as stated above, the record supports the Law Judge's determination that the plaintiff's chronic pain and eye problems did not rise to the level of severe impairments during the insured period. Furthermore, the record provides substantial evidence to support the Law Judge's finding that the combination of the plaintiff's impairments (both severe and nonsevere) did not have a disabling impact on her through the date last insured.

To challenge the basis of the Law Judge's decision, the plaintiff points to the fact that her treating physicians determined six years after the date last insured that the combination of her impairments rendered her totally disabled for all work. It is true that both of Mrs. Snyder's treating physicians submitted Multiple Impairment Questionnaires in which they diagnosed diabetic neuropathy and retinopathy and provided clinical findings to support their opinion. C.F. Suter, M.D., was one of Mrs. Snyder's treating physicians. In a letter dated March 31, 2010, Dr. Suter stated that he been treating the plaintiff for over ten years. In diagnosing retinopathy and neuropathy, Dr. Suter stated that these conditions caused impaired peripheral vision and chronic pain in the left side of the plaintiff's body. He opined that these medical issues rendered Mrs. Snyder unable to work even at a part-time, sedentary job.

Approximately three months later, on June 24, 2010, Dr. Suter completed a Multiple Impairment Questionnaire, in which he diagnosed chronic pain, diabetes mellitus, and hypothyroidism. After listing various clinical findings, Dr. Suter assessed the plaintiff's symptoms, including pain throughout the left side of her body, numbness of both feet, pain

6

related to neuropathy, fatigue, and a right visual defect. Dr. Suter rated the plaintiff's pain as seven to ten on a ten-point scale. He then opined that Mrs. Snyder was limited to a total of two to three hours of sitting and two to three hours of standing or walking in an eight-hour work day. Dr. Suter determined that the plaintiff could occasionally lift and carry up to ten pounds. Furthermore, he found that Mrs. Snyder was essentially precluded from reaching, grasping, turning, and twisting objects and was significantly limited in performing fine manipulations. He opined that the plaintiff's pain, fatigue, and other symptoms frequently interfered with her ability to concentrate. These symptoms and impairments would cause the plaintiff to miss at least three days of work per month, Dr. Suter believed. Finally, Dr. Suter opined that the symptoms and limitations detailed in the questionnaire had been present for the past ten years.

Larry Stephenson, M.D., was the other treating physician who completed a questionnaire on behalf of Mrs. Snyder. The questionnaire, dated December 7, 2010, reflected Dr. Stephenson's opinion that the plaintiff's symptoms and limitations had been present since 2000.[2] In a slightly stronger posture than that adopted by Dr. Suter, Dr. Stephenson expressed his belief that Mrs. Snyder "is fully disabled and has been for a number of years, in my opinion, but definitely over the past 5 to 10 years." (Tr. 1395.)

As stated above, the treating physicians' opinions lend some support to the plaintiff's argument that the Law Judge erred in finding that her chronic pain syndrome and visual limitations did not rise to the level of severe impairments. However, the problem in this case, and the central issue on appeal, is whether these opinions, rendered approximately six years after the date last insured, relate back to the plaintiff's insured period. Johnson v. Barnhart, 434 F.3d 650, 655–56 (4th Cir. 2005) (per curiam). While Mrs. Snyder's own testimony supports the

---

[2] For purposes of the issues relevant to this appeal, Dr. Stephenson characterized the plaintiff's symptoms and limitations similar to the way in which Dr. Suter captured them.

7

opinions of her treating physicians, the objective medical evidence from the insured period, as summarized above, fails to corroborate the plaintiff's position—instead, the medical evidence of record actually contradicts the opinions of the treating physicians and the plaintiff's own testimony. Although, as stated above, the medical evidence from the plaintiff's insured period might establish the existence of impairments in the form of chronic pain syndrome and retinopathy, this evidence fails to lend support to the argument that these impairments, together with her other impairments, were so severe as to prevent performance of past relevant work. The only shreds of evidence from the insured period that speak even slightly to this issue indicate that, towards the very end of the insured period, Mrs. Snyder's chronic pain syndrome and retinopathy interfered to some extent with her ability to focus. (Tr. 258, 788.) Furthermore, at one other location in the transcript, medical evidence from the insured period suggests that the plaintiff would have to curtail her activity during the times when the pain would attack her. (Tr. 1168.) Hence, because the treating physicians' opinions stand in bold contrast to the objective medical evidence through the date last insured, substantial evidence exists to support the Law Judge's decision not to relate back those opinions to the insured period.

Furthermore, because the treating physicians' opinions were inconsistent with the thrust of the objective medical evidence through the date last insured, the Law Judge reasonably elected not to accord controlling weight to those opinions. See Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) ("By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."). In explaining his decision to afford "no weight" to the treating physicians' opinions, the Law Judge specifically stated that those opinions stood in strong contrast to the objective medical evidence of record from the insured period. See SSR 96-2P,

8

1996 WL 374188, at *5 (July 2, 1996) (explaining that the Law Judge must provide "specific reasons for the weight given to the treating source's medical opinion").

Because the objective medical evidence largely contradicts the plaintiff's assertions of disabling pain, the Law Judge was likewise justified in discounting the plaintiff's credibility regarding her allegations of pain. More specifically, the Law Judge determined that the objective medical evidence through the date last insured "fail[ed] to support the claimant's assertions of total disability through the date last insured."[3] (Tr. 20.) A plaintiff's subjective statements concerning pain, impairments, and limitations are insufficient, alone, to establish a disability; instead, in evaluating a claimant's credibility, the fact-finder must consider the objective medical evidence in the case. See Craig, 76 F.3d at 592 ("[A]llegations of pain and other subjective symptoms, without more, are insufficient [to establish disability]. . . . [P]ain is not disabling per se, and subjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof." (internal quotation marks omitted)); see also 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. . . . However, statements about your pain or other symptoms will not alone establish that you are disabled . . . ."). Thus, because the objective medical evidence substantially supports the Law Judge's decision not to fully accept the plaintiff's testimony, this court will not disturb the Law Judge's credibility determination. See Craig, 76 F.3d at 589 ("In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the Secretary.").

---

[3] However, the court notes that the Law Judge accorded some weight to the plaintiff's testimony regarding her pain and symptoms. (Tr. 20.) Hence, the Law Judge's finding that the plaintiff was at least partially credible belies the plaintiff's argument on appeal that the Law Judge improperly evaluated her credibility.

9

Finally, as for the plaintiff's argument that the hypothetical questions put to the vocational expert were incomplete, the court notes that the Law Judge was not required to consider vocational expert testimony in assessing the plaintiff's capacity to perform her past relevant work. Germano v. Astrue, Civil Action No. 5:09CV00083, 2010 WL 1838416, at *4 (W.D. Va. May 6, 2010); 20 C.F.R. § 404.1560(b)(2); see also Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983); Taylor v. Weinberger, 512 F.2d 664, 668–69 (4th Cir. 1975). However, although the Law Judge elected to consider the vocational expert's testimony at the fourth step of the sequential analysis in assessing the requirements of the plaintiff's past work, the Law Judge independently arrived at the same conclusion reached by the vocational expert after comparing the plaintiff's residual functional capacity with the physical and mental demands of her past relevant work. (Tr. 21.)

In short, the evidence on which the plaintiff relies on appeal to argue that the Law Judge's decision is not supported by substantial evidence breaks down under the weight of the record as a whole. While it certainly appears that Mrs. Snyder is disabled at the present time, there is substantial evidence to support the Law Judge's determination that the more recent evidence documenting her disability cannot be related back to the critical period in which she still enjoyed insured status. The objective medical evidence through the date last insured simply fails to bear out the plaintiff's assertion that the Law Judge erred by neglecting to identify certain severe impairments that, in combination with all of her other severe and nonsevere impairments, allegedly prevented her from performing basic work activities.[4]

For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final

---

[4] Furthermore, the court notes that, to the extent that conflicts exist in the evidence, the resolution of those conflicts are properly ceded to the Commissioner, even if this court might resolve them differently. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

10

decision of the Commissioner must be affirmed. Laws, 368 F.2d at 642. An appropriate judgment and order will be entered this day.

The Clerk is directed to send certified copies of this order to all counsel of record.

ENTER: This 21st day of June, 2012.

/s/ Glen Conrad
Chief United States District Judge